**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Patricia Lou Dion, | No. CV-23-08067-PCT-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Patricia Lou Dion ("Plaintiff") seeks judicial review of the Social Security Administration ("SSA") Commissioner's decision finding Plaintiff not disabled. (Doc. 1). Plaintiff filed her Opening Brief (Doc. 11), the Commissioner filed a Response (Doc. 15), and Plaintiff filed a Reply (Doc. 16). Upon review of the briefing and the Administrative Record ("AR")[1] (Doc. 8), the Court reverses, in part, the Administrative Law Judge's ("ALJ") decision of June 22, 2022. (AR 146–59).

**I.     Background and Procedure**

Plaintiff was born in 1969, has a tenth-grade education, and worked as an office manager and assistant from about 1990 through 2020. (AR 146). Applying for disability benefits, she states experiencing changes to her work beginning May 9, 2020, due to rheumatoid arthritis, fibromyalgia, depression, and acid reflux. (AR 440). In May 2020, she was working at a non-profit four hours a day, five days a week. (AR 441). She reported having difficulty with simply tasks like getting dressed, washing her hair, and brushing her

---

[1] "AR" indicates the Administrative Record. (Doc. 6).

teeth because her arms feel heavy. (AR 453).

Plaintiff applied for disability benefits under Title II of the Social Security Act on June 26, 2020, alleging disability beginning May 9, 2020. (AR 146, 359–63, 374–88). The Commissioner denied her application and Plaintiff requested a hearing before an ALJ. The ALJ conducted a telephonic hearing on March 25, 2022. (AR 14). Plaintiff testified in that hearing. (AR 1846).

### A. Plaintiff's statements and testimony

The ALJ determined that even if combined, Plaintiff's medically determinable impairments only minimally affected her ability to perform basic work activities for twelve consecutive months. (AR at 157). A review of the record, including Plaintiff's own testimony, supports this finding with the exception of pain related to her symptoms of arthritis.

Plaintiff testified that she has a driver's license and lives alone in a condominium with her dog. (AR 18–19). She has three adult children. (AR 18). She does not use a cane, wear splints or use assistance devices for walking. (AR 31). Plaintiff testified that she could walk her dog one city block but has to stop regularly. (AR 37). She testified to being able to walk up a flight of stairs but she has to hold on to the rail and take it slow, or have assistance. (AR 38). To type, Plaintiff has to "open my hand . . . move them, try to get them warmed up . . . to be able to type." (AR 40).

Plaintiff testified that she works about 11 hours a week at a food bank in a managerial position. (AR 24–25). She testified that she is unable to work because her hands are very swollen at times and she has chronic joint pain in her elbows which make it difficult for her to drive. (AR 26). Plaintiff testified that she has one to three good days a week where she can shower, put on make-up, drive herself, grocery shop, and take her dog to the park. (AR 30). She can also lift her groceries and participate in water aerobics. On a bad day, she has pain of 10, on a 10-point scale, and she does not get out of bed. (AR 31, 35). At times, she has someone drive her. (AR 19). She also may not interact with the public due to her appearance. (AR 42). She further stated that depression

contributed to her staying in bed. (AR 26). Plaintiff testified that during these times she is also unable to concentrate. (*Id.*) Plaintiff disagreed with Dr. Price's assessment that she should be able to sit comfortably for four hours a day and be on her feet for an hour. (*Id.*) She states she is limited to two hours of work in intervals during a day and about 30 minutes of standing. (AR 38).

Plaintiff testified that to manage her symptoms she has tried acupuncture and chiropractic care. (AR 27). She also does water aerobics and sits in a hot tub. (*Id.*) She has tried Naproxen for her inflammatory symptoms. (*Id.*) She also takes Celecoxib if her pain level is higher than six, and Meloxicam for pain. (*Id.*) She takes Famotidine for heartburn and Triamcinolone cream for her hands. (AR 28). She reportedly quit Duloxetine because it resulted in suicidal thoughts, which prompted her to see a therapist for depression. (*Id.*)

### B.     The ALJ's Determination

On June 22, 2022, the ALJ determined that Plaintiff was not disabled at any time through the date of decision because she had no severe impairments. (AR 146–59). The ALJ found that Plaintiff has the following medical determinable impairments: hyperlipidemia, gastroesophageal reflux disease, right epicondylitis, obesity, chronic tracheobronchitis, unspecified arthritis of unspecified site, post-traumatic stress disorder and agoraphobia. (AR 149). The ALJ determined that Plaintiffs alleged disabilities of inflammatory arthritis, lupus fibromyalgia, carpal tunnel syndrome and obstructive sleep apnea were not medically determinable impairments for purposes of the SSA because the independent diagnostic tests and medical records examining each of these impairments were not established by medical evidence consisting of signs, symptoms, and laboratory findings. (AR 151–53). The ALJ concluded that Plaintiff has not been under a disability from May 9, 2020, through June 22,2022, the decision date. (AR 158–59).

Plaintiff appealed the ALJ's decision and the Appeals Council denied Plaintiff's request for review on February 28, 2023. (AR 1–3). She now seeks a review of the SSA Commissioner's determination finding that she is not disabled under Sections 202 and

223(d) of the SSA.

## II.     Standard of Review

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id*. To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id*. As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). (citations omitted).

The ALJ is responsible for resolving conflicts in the testimony, determining credibility, and resolving ambiguities. *Andrews*, 53 F.3d at 1039. The ALJ must provide clear and convincing reasons for rejecting a Plaintiff's symptom testimony. *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014). However, the Court will not reweigh the evidence on appeal. *See Trejo v. Colvin*, 2016 WL 769106, at *3 (C.D. Cal. Jan. 28, 2016) ("This Court does not reweigh the evidence or act as a next-level fact-finder on appeal; its appellate review is limited to determining whether the agency committed reversible legal error.").

## III.    ANALYSIS

Plaintiff raises one argument in her Opening Brief: that the ALJ erred at Step Two. (Doc. 11 at 1). Plaintiff alleges that the ALJ found that she had the medically determinable impairments of hyperlipidemia, gastroesophageal reflux disease, right epicondylitis, obesity, chronic tracheobronchitis, unspecified arthritis of unspecified site, post-traumatic

stress disorder and agoraphobia, yet she applied an overly stringent application for the *de minimis* standard at Step Two, resulting in a finding that these impairments were not severe. (Doc. 11 at 15). Plaintiff asserts the ALJ did not considering the combined effect of all her impairments on her ability to function. (*Id.*) Plaintiff also asserts that the ALJ did not provide specific, clear, and convincing reasons for rejecting her subjective complaints and did not articulate "how persuasive [the ALJ] find[s] all of the medical opinions and all of the prior administrative medical findings in the case." (*Id.* at 22).

In response, Defendant states that the ALJ "pointed to sufficient evidence in the record to support a finding that none of [her] impairments was severe." (Doc. 15 at 5–6). Defendant asserts that the ALJ examined the medical record and Plaintiff's daily tasks and determined that her allegations of subjective complaints were not consistent with the record. (*Id.* at 9). Finally, the Defendant refutes that the ALJ only offered a summary of the evidence without distinction because the "ALJ summarized [her] allegations and then addressed the evidence regarding each of her alleged impairments providing sufficient analysis for the court to discern her meaning." (*Id.*)

### A. The Step Two Disability Determination Process

As Plaintiff asserts error only as to the ALJ's Step Two review, the Court will confine its consideration accordingly. To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five–step process. 20 C.F.R. § 416.920(a)-(g). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. If so, the claimant is not disabled, and the inquiry ends. *Id*. Second, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. If not, the claimant is not disabled, and the inquiry ends. *Id*.

At Step Two, a claimant need only make a *de minimis* showing for the analysis to proceed; indeed, a proper denial of a claim at Step Two requires an unambiguous record showing only minimal limitations. *See Glandin v. Kijakazi*, 86 F.4th 838, 844 (9th Cir.

2023). Once a claimant presents evidence of a severe impairment, an ALJ may find an impairment or combination of impairments "not severe" "*only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb*, 433 F.3d at 686 (quoting *Smolen*, 80 F.3d at 1290). An ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991); *see also* 20 C.F.R. § 404.1529(c)(2). In determining the severity of impairments, the ALJ considers the claimant's testimony, treatment notes, imaging, reports of daily activities, opinion evidence, and any other statements or observations in the record. 20 C.F.R. § 404.1529(a).

In light of these standards, the Court must determine if the ALJ considered sufficient evidence in the record to support her conclusion that Plaintiff's severe impairments had no more than a minimal effect on her ability to work. The Court will discuss the ALJ's determination that Plaintiff's statements about the intensity, persistence, and limiting effects of each of her medically determinable impairments are not severe. The Court will then address the ALJ's determination that Plaintiff's alleged disabilities of inflammatory arthritis, lupus fibromyalgia, carpal tunnel syndrome and obstructive sleep apnea were not medically determinable impairments for purposes of the SSA, and thus were not considered in combination with her other medically determinable impairments.

### B. Medically Determinable Impairments

#### 1. *Hyperlipidemia (high cholesterol)*

The ALJ reviewed the medical records and determined that Plaintiff had Hyperlipidemia as evidenced by elevated levels of triglyceride, cholesterol, and low-density lipoprotein. She observed, however, that medication was not recommended. (AR 154). Rather, Plaintiff was advised to make lifestyle modifications. (*Id.*) The ALJ concluded that there is nothing in the record to show that Plaintiff's hyperlipidemia caused or contributed to any other cardiac condition or affected her work-related functions. So, the ALJ concluded that this was a non-severe impairment. (*Id.*) Indeed, the Plaintiff's

testimony does not mention her low-cholesterol, what, if any medical regimen she is on to address this symptom, or how it affects her daily activities. The Court's review of the record supports the ALJ's conclusion.

### 2. *Gastroesophageal reflux disease (GERD)*

The ALJ determined that Plaintiff was diagnosed with a mild reflux patter of esophagitis but in July 2020, there was no mass, stricture, hiatal hernia, or reflux. (AR 154). She observed that Plaintiff took Protonix and antacid medications to control her GERD. (*Id.*) Though the ALJ noted that Plaintiff reported pressure in her right upper chest that interferes with sleep and some pain after meals, Plaintiff did not report that these symptoms restricted her ability to perform any physical or mental activities in the workplace. (*Id.*) Furthermore, the ALJ noted that she also frequently denied experiencing heartburn. (*Id.*) The ALJ concluded that Plaintiff did not identify any limitations associated with her GERD. (*Id.*)

The ALJ properly noted that Plaintiff was instructed that dietary modification are important to address her symptoms but she did not report undertaking those modifications. (*Id.*) The ALJ concluded that Plaintiff's GERD was not disabling. (*Id.*) Plaintiff's only reference to GERD is that she was diagnosed with having it, and underwent a colonoscopy in July 17, 2020 and was diagnosed with internal hemorrhoids. (Doc. 11 at 6). The Court agrees that this record supports the ALJ's finding that Plaintiffs GERD is a slight abnormality that causes no restrictions on Plaintiff's activities.

### 3. *Chronic tracheobronchitis*

The ALJ found that Plaintiff was diagnosed with tracheobronchitis after she contracted COVID-19 in November 2020. (AR 154). In April 2021, Plaintiff reported experiencing ongoing shortness of breath and a cough. (AR 155). An examination resulted in a finding of rhonchi and wheezing, but an observation of no respiratory distress, no use of sensory muscles, and no chest wall tenderness. (*Id.*) She was prescribed an inhaler and Prednisone. (*Id.*) Two months later, Plaintiff completed tests yielding a 98 percent oxygen saturation at rest, and 96 percent with exercise. (*Id.*) She had minimal obstructive lung

defect. (*Id.*)

The ALJ noted a finding that a pulmonologist described chronic bronchitis but that there is nothing to suggest it was a persisting condition. (*Id.*) The ALJ's review of the record showed that after her pulmonologist visit, Plaintiff denied cough and shortness of breath. (*Id.*) There were also subsequent findings of "no more than a minimal obstructive lung defect and no oxygen desaturation with exercise." (*Id.*) So, the ALJ concluded that this impairment resulted in a no more than minimal effect on Plaintiff's activities. (*Id.*) The Court finds that the ALJ's analysis of the record supports this conclusion.

   *4. Depression, PTSD, and Agoraphobia*

Plaintiff testified that she experienced depression which made it difficult to concentrate and work. (AR 156). However, Plaintiff underwent a consultative examination resulting in no diagnosis of depression. (*Id.*) The ALJ noted Plaintiff's inconsistencies in her reported symptoms of depression like sadness or tearfulness during 2021 and 2022. (*Id.*) In 2021, she reported being depressed three-times, and twice in 2022. (*Id.*) The ALJ noted that her medical treatment providers routinely found that she had normal psychiatric exams, and none of her providers in 2021 diagnosed her with depression. (AR 157). Plaintiff also concedes that she did not meet diagnostic criteria for a DSM-5 diagnosis. (Doc. 11 at 7).

The ALJ did note that Plaintiff began mental health treatment in March 2022. (AR 156). Plaintiff reported symptoms of chronic tiredness, increased appetite, sleep disturbance and fatigue. (AR 156–157). She was apparently diagnosed with and being treated for PTSD and agoraphobia but not depression. (AR 157). The ALJ observed that this was a single assessment however, and this diagnosis was gleaned from the treatment providers billing codes. (*Id.*) The ALJ determined that the Plaintiff's reported mental impairments present only mild limitations because "she continues to work as an office manager on a part-time basis, suggesting substantially intact cognitive function, ability to interact with other, adapt to changes and manage psychologically-based symptoms." (*Id.*)

The ALJ's conclusion is not error because Plaintiff's medical record contains no

diagnosis of depression, and there is no indication that her PTSD and agoraphobia treatment would last beyond twelve-months. Moreover, the ALJs opinion is supported by the state medical consultants who found Plaintiff's mental impairments not severe. (AR 77–92 (Exh. 3A); 93–108 (Exh. 4A); 109–124 (Exh. 5A); 125–140 (Exh. 6A)).

### C. Non-Medically Determinable Impairments of Arthritis, Rheumatoid Arthritis; Osteoarthritis; Fibromyalgia

The Court finds that the ALJ erred in not reconciling conflicts related to Plaintiff's alleged disabilities associated with arthritis, osteoarthritis, and fibromyalgia, because there are ambiguities in the medical record that the ALJ failed to resolve. *Andrews*, 53 F.3d at 1039. Those ambiguities must be resolved before considering whether an impairment singularly or in combination with other impairments meets or medically equals an impairment. Finally, the ALJ erred in arriving at the decision to reject Plaintiff's pain testimony based on an absence of medical records. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991); *see also* 20 C.F.R. § 404.1529(c).

Plaintiff's symptoms generally include pain of her joints, including fingers, elbows, cervical, and lumbar pain. Plaintiff's symptoms persisted from the date of application through the disability hearing. The record shows that Plaintiff was treated by chiropractor Derek Price, D.C. who opined about the effects of her inflammatory arthritis. (AR 158). Dr. Price stated Plaintiff could sit for four hours and stand or walk up to one hour in an eight hour day, lift less than ten pounds, occasionally, have rare to minimal use of her hands and be absent from work three to four times a month. (*Id.*; Exh 6F).

Plaintiff's opening brief suggests that the ALJ erred because she did not engage in an analysis of the objective evidence that supported Dr. Price's opinion. (Doc. 11 at 23-24). Plaintiff asserts that labeling Dr. Price's restrictions as "extreme" was not based on any standard under the SSA. (Doc. 16 at 3).

Evaluating the competing medical record, the ALJ remarked that Dr. Price's assessment was based on a diagnosis of inflammatory arthritis. (AR 158). An April 2021 subjective objective assessment plan ("SOAP") note by Dr. Price assesses Plaintiff with "other specified arthritis." (AR 670). The ALJ noted that Dr. Price, is not an acceptable

source who can diagnose medically determinable impairments. In making that finding, the ALJ noted that an inflammatory arthritis diagnosis was excluded by two rheumatologists. (AR at 155–58 (referencing Exh 9F)). The record supports this. In a February 4, 2021, exam, Dr. Shahzad did reference a September 2020 lab report indicating "Rheumatoid factor negative" and noted Plaintiff does not have rheumatoid arthritis. (AR 645).

However, further review of the medical record shows that there is other support in the record for Plaintiff's reported chronic pain. In an August 27, 2020 assessment, Dr. Shahzad examined Plaintiff for complaints of "polyarthralgias (joint pain) affecting all of her joints . . symptoms have been going on for several months" and "sore muscles in her arms and legs." (AR 652; Exh 9F). He was unable to make an assessment noting no lab results to review. (*Id.*) Two months later, a medical exam on October 12, 2020, by Dr. Shahzad noted "acute medial epicondylitis" and "acute osteoarthritis." (AR 648–49). Then in February, 2021, Dr. Shahzad found that Plaintiff "likely has osteoarthritis affecting the spine." (AR 646). Dr. Shahzad also made an "unspecified osteoarthritis" finding in his February 4, 2021, assessment. The ALJ did not reconcile Dr. Price's assessment of inflammatory arthritis with Dr. Shahzad's observations of medial epicondylitis, and acute osteoarthritis.

As for Plaintiff's obesity, the ALJ's observed that though she is clinically obese, "it does not cause more than a minimal limitation of physical or mental ability to do basic work activities." (AR 156). At the same time, the ALJ acknowledged that Plaintiff's obesity could create functional deficits in combination with other severe symptoms, including her respiratory and musculoskeletal impairments, but noted that her tracheobronchitis appeared to have resolved and her physical exams showed full range of motion, full strength and no tenderness. (*Id.*) Then, without discussing her musculoskeletal impairment remark, the ALJ concluded that Plaintiff's weight "has little effect" on her arthritis. (*Id.*) The ALJ did not consider what, if any impact her obesity had when combined with her other pain symptoms.

Regarding Plaintiff's epicondylitis, the ALJ notes that beyond her reported elbow pain in February 2020, no other medical records relate to Plaintiff's epicondylitis leading

the ALJ to a determine that it did not last for twelve consecutive months. (AR 154). Plaintiff reported experiencing it for several months. (*Id.*) The ALJ observed that Plaintiff was diagnosed with medial epicondylitis and given a steroid injection. (*Id.*) In October 2020, Plaintiff reported that the injection lasted two weeks and she continued to experience sharp pain. (*Id.*) She was advised to brace, apply ice, and use Mobic. (*Id.*) The ALJ found no other report of epicondylitis, and concluded that it did not last for twelve consecutive months. (*Id.*)

The Court finds that the ALJ erred in determining that the epicondylitis did not last for twelve consecutive months because she reported experiencing elbow pain for several months prior to February 2020. Although the ALJ correctly notes that there are no other references in the record related to epicondylitis after 2020, the ALJ does not discuss whether she evaluated this symptom along with Plaintiff's other arthritis symptoms; she then supports her conclusion with an absence of subsequent medical reports.

Finally, the Court notes the ALJ correctly recites that in one assessment with her primary care provider on December 8, 2021, "Plaintiff needs us to put a diagnosis of fibromyalgia in her chart." (AR 152; 701). Yet, the ALJ ignores the provider's next sentence: "There is a consult note in patient's chart from March of this year where Dr. Nayer noted the diagnosis of Fibromyalgia." (AR 701). The ALJ then concludes that there were no findings consistent with fibromyalgia such as tender points. (AR 152) ("[t]he first set of criteria . . . also requires at least 11 positive tender points on physical examination[.]). The ALJ then notes that the requisite tender point findings for fibromyalgia were absent from the record. Yet the December 8th assessment by APN Lisa Stanley, makes a finding of "fibromyalgia-Primary" followed by a prescribed form of treatment. (*Id.*)

The ALJ observed that Plaintiff "has not required the degree of treatment one would expect for disabling impairments." (AR 155). The ALJ noted that she has not undergone any physical therapy, no surgeries have been recommended, and that Plaintiff testified to not using any assistance devices like splints, braces, or assistive devices. (*Id.*) Rather, to manage her symptoms, she has tried acupuncture and chiropractic treatments, uses hot tubs and water aerobics. (*Id.*) When needed, she also uses anti-inflammatory medications. (*Id.*)

As explained, the ALJ's opinion as to Plaintiff's conservative treatment is based on an incomplete analysis.

An ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell*, 947 F.2d at 341 (9th Cir. 1991). The ALJ overlooked present, albeit nuanced references in the record, to Plaintiff's pain symptoms generally associated with arthritis, including osteoarthritis. There are ambiguities in the record as to medical assessments of what may contribute to Plaintiff's pain symptoms which went unresolved. So, the Court must remand for the ALJs reconsideration of those ambiguities.

## IV. Conclusion

The Court finds the ALJ properly discussed sufficient record evidence to support a finding that Plaintiff has medically determinable impairments of hyperlipidemia, gastroesophageal reflux disease, post-traumatic stress disorder and agoraphobia but that they are not severe. However, the Court finds the ALJ erred in not reconciling inconsistencies in the record relating to Plaintiff's alleged symptoms of arthritis, osteoarthritis, and fibromyalgia. So, the Court will remand the matter for further proceedings. *See Washington v. Kijakazi*, 72 F.4th 1029, 1041 (9th Cir. 2023). The ALJ must reconcile the medical record and reconsider the Step Two process.

Accordingly,

**IT IS ORDERED** that the decision of the Commissioner is **REVERSED**, and this case is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings to allow the Commissioner to further evaluate the medical opinions of record, reconsider the Step Two process regarding Plaintiff's alleged symptoms of arthritis, osteoarthritis, and fibromyalgia, and issue a new decision in accordance with this Order.

/ / /
/ / /
/ / /
/ / /

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to enter judgment accordingly.

Dated this 30th day of September, 2024.

Honorable Diane J. Humetewa
United States District Judge